Emily Noelle Mihaylo
Place of Confinement:

Viewpoint Dual Recovery
702 W. Hillside Ave.
Prescott, AZ 86301

FILED     LODGED
RECEIVED    COPY

JAN 1 1 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

James Joseph Knochel  (co-petitioner)
1100 W Valley View Rd
Prescott, AZ 86303
(928) 925-0279

# IN UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Emily Noelle Mihaylo;

James Joseph Knochel,
                Plaintiffs,

v.

Shane Russell-Jenkins;

Amy Fackrell;

John C. Morris,
             Respondents,
            and

The Attorney General of the State of
Arizona,
           Additional Respondent.

CASE NUMBER:

CV-18-08004-PCT-~~DGC~~-~~DKD~~

GMS-JZB

by8Q

## PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (NON-DEATH PENALTY)

### Petition For Writ of Habeas Corpus

Emily Noelle Mihaylo ("Mihaylo") is restrained of liberty by the State of Arizona with

an order for court-ordered mental health treatment. Since September 2015, the

State of Arizona, its various agents, and various private parties have consistently and

repeatedly violated Mihaylo's state and federal constitutional rights.

Mihaylo was erroneously found to have a "persistent or acute disability" (a type of "mental disorder") on 11-20-2015, and was subjected to the order for treatment. After her condition was worsened by harmful treatments forced upon her, Mihaylo was arrested for strict-liability offenses on 05-25-2016.

Shane Russell-Jenkins is the medical director of West Yavapai Guidance Clinic ("WYGC"), the agency which is currently administrating Mihaylo's order for court-ordered treatment. Mihaylo was found to have a "grave disability" by the Yavapai Superior Court in October 2016 and October 2017, and is currently obligated to pay to reside at "Viewpoint Dual Recovery". Amy Fackrell is the Executive Director of Viewpoint Dual Recovery. Mihaylo will presumably be forced to stay at Ms. Fackrell's business for as long as Dr. Russell-Jenkins and the Yavapai Superior Court agree that she is not capable of taking care of herself, or until she runs out of money for rehab-ransom. John C. Morris is Chief Officer of Yavapai County's adult probation department.

This Petition has been filed by Mihaylo's boyfriend, James Joseph Knochel ("Knochel"). It is filed with Mihaylo's knowledge and permission. Knochel has been a personal witness to the suffering imposed on Mihaylo via the order for court-ordered treatment, and is himself also injured by Respondents' illegal restraint of Mihaylo. Knochel does NOT believe that Mihaylo has a "persistent or acute disability" or a "grave disability". Knochel's observations are that Mihaylo is acutely disabled by the anti-treatments forced upon her.

Knochel claims "next friend" status for Mihaylo on the following basis (*Whitmore v.*

*Arkansas, 495 US 149*):

1. Mihaylo has an acute "mentally incapacity" on account of the harmful prescription drugs forced upon her by the Respondents. She is incapable of acting in her own best interests because her previous experience with court-ordered treatment is that the only way for her to escape is to take, without complaint, the harmful medications the medical professionals think she requires.

2. Mihaylo is incapable of signing this petition herself because she is rendered inaccessible by being involuntarily housed at Fackrell's Viewpoint Dual Recovery. Fackrell's drug program specializes in getting clients such as Mihaylo "stabilized" on palliative psychiatric drugs. Fackrell, et al, consider Knochel to be an impediment to their program for Mihaylo because he does not share their belief that Mihaylo is being helped by the Respondents' treatment program, and have restricted Mihaylo and Knochel's contact.

3. Knochel is "truly dedicated" to Mihaylo's best interests. Knochel has videos of him & Mihaylo frying donuts (2 weeks before her first hospitalization and 3 months before the order for court-ordered treatment was issued) and hand-written notes and letters as evidence of their "significant relationship". He visited Mihaylo almost every day while she was being "evaluated" at Maricopa County's Desert Vista center in September/October, 2015 (visitor badges). He took Mihaylo to a holistic MD, who used to run a conventional Emergency Room, in November 2015 in an attempt get appropriate medication (medical records). Mihaylo called Knochel to retrieve her from Las Vegas in March, 2016

(phone/cc records).

4. Mihaylo specifically asked Knochel to "please get me out of here" during the first of four stays at Respondent Russell-Jenkins' psychiatric hospital (June 2016). This was a specific request for Knochel to file another habeas corpus petition on Mihaylo's behalf (Habeas corpus for Mihaylo was previously granted by the Maricopa County Superior Court on 9-22-2015 [EXHIBIT 1], but this order of the court was not respected by the hospital that then had custody of Mihaylo).

WYGC is certainly the best treatment provider/administrator that Mihaylo has been subjected to during her ordeal, as the treatment decisions of earlier treatment administrators were entirely guided by profit motives. WYGC eventually figured out that Mihaylo would benefit from Folate (Vitamin B-9) supplementation. WYGC otherwise implements a mostly-conventional approach to mental health. For various reasons, Russell-Jenkins and WYGC have not admitted that they and their colleagues in Maricopa County misdiagnosed Mihaylo, and that she is greatly harmed by the non-helpful drug treatments they force upon her.

(The balance of this Petition is patterned according to the format of the court-approved form for 28 U.S.C. § 2254 petitions.)

1. (a) **Name and location of courts that entered the judgment of conviction you are challenging:**  Order for treatment was originally issued by the Maricopa County Mental Health Court on 11-20-2015. Order for treatment was transferred in April or May, 2016 to Yavapai Superior Court, 120 South Cortez St, Prescott AZ 86303. Criminal Charges against Mihaylo are also in the Yavapai Superior Court

(b) **Civil case number**: <u>MH 2015-004271 (Original Maricopa County case #). The current mental health court case (Yavapai County) is sealed and the case number is unknown to Knochel</u>

**Criminal case number**: <u>P-1300-CR-201601186 (Yavapai County)</u>

2. **Dates of judgment of conviction**: <u>11-20-2015 (Civil Order for treatment, Maricopa County, later transferred to Yavapai County). Order for treatment was renewed in Yavapai County in October 2016 and October 2017.</u>
<u>9-22-2016 (Criminal charges, Yavapai County)</u>

3. **In these cases, were you convicted on more than one count or crime?** <u>One civil case, one criminal charge</u>

4. **Identify all counts and crimes for which you were convicted and sentenced in these cases:** <u>Mihaylo was found "persistently or acutely disabled" by the Maricopa County Mental Health Court. In October 2016 the Yavapai Superior Court upgraded Mihaylo's condition to "gravely disabled". Mihaylo's order for treatment was renewed in October 2017.</u>
<u>Mihaylo plead guilty to "DRUG PARAPHERNALIA-POSSESS/USE" on 9-22-2016.</u>

5. **Length of sentence for each count or crime for which you were convicted in these cases:** <u>Mihaylo was subjected to 365 days of court-ordered mental health treatment. This order for treatment was renewed in October 2016 and October 2017 by the Yavapai Superior Court.</u>
<u>The plea bargain for the drug paraphernalia charge is 3 years of probation.</u>

6. **(a) What was your plea?**

   Mental Health charges: (unknown to Knochel)

   Drug paraphernalia Charges:  Guilty

7. **Did you testify at the trial:** (n/a)

8. **Did you file a direct appeal to the Arizona Court of Appeals from the judgment of conviction?** NO

9. **Did you appeal to the Arizona Supreme Court?** NO

10. **Did you file a petition for certiorari in the United States Supreme Court?** NO

11. **Other than the direct appeals listed above, have you filed any other petitions, applications or motions concerning these judgements of conviction in any state court?** YES

**(a) First Petition**

**(1) Date you filed:** 06-20-2016

**(2) Name of court:** Yavapai County Superior Court

**(3) Nature of the proceeding:** habeas corpus

**(4) Docket or case number:** P 1300 CV 201600447

**(5) Result:** "Dismissed without prejudice", justified with an incorrect quotation of A.R.S. § 36-546, "Judicial Review". (EXHIBIT 2)

**(6) Date of result:** 06-28-2016

**(7) Grounds raised:**

(a) WYGC's treatment program for Mihaylo is unlawful & unconstitutional.

(b) Mihaylo in the past appropriately arranged for her own medical care.

(c) Mihaylo's alcohol use disorder was caused by methadone-induced sugar cravings.

(d) Inflammation caused by diet was a factor in Mihaylo's symptomatic presentation.

(e) Mihaylo has been consistently misdiagnosed since 09-25-2015.

(f) "persistent or acute disability" is an ambiguous finding.

(g) If Mihaylo is indeed 'persistently disabled', this condition was caused by medical professionals.

(h) The National Institute of Mental Health says that patients do best when taken off "anti-psychotics" as soon as possible.

(i) Mihaylo's condition was entirely caused by alcohol and street drugs.

(j) Mihaylo was made to be addicted to clonazepam (a benzodiazepine) in January 2016. This class of drugs is known to worsen anxiety after about 4 weeks of use. After about 6 weeks, Mihaylo did not like her clonazepam-enhanced anxiety, and ordered heroin from her street pharmacist to get through the benzo-withdrawal. Benzodiazepines amplified the effect of the heroin. This caused Mihaylo to overdose on 2-13-2017. Knochel had to call

911.

(k) Mihaylo responded very well to the naloxone used by the firefighters. Her drinking was under control for about two weeks. 10 days after being revived, Mihaylo told Knochel that she'd realized she'd talked herself into believing things which hadn't happened. There is a strong scientific basis to attribute this lucidity to the firefighter's administration of naloxone.

(l) The drug Naltrexone is very similar to Naloxone. Naltrexone is FDA-approved for alcohol use disorder and opiate use disorder, and would be an appropriate treatment for Mihaylo's "individual needs".

(m)     Knochel has observed that Mihaylo lost her ability to regulate her alcohol intake while under the effects of the anti-psychotics. She resumed drinking heavily about two weeks after being revived by the fire department.

(n) Mihaylo was taken to a "stabilization" in Phoenix on about 3-9-2016, where the psychiatrists also didn't care that their patient had been drinking heavily. This treatment agency injected Mihaylo with Abilify the day before releasing her to an acquaintance's apartment on 3-16-2016.

(o) On 3-17-2016 Knochel had to drive to Las Vegas to retrieve Mihaylo. This is how Mihaylo ended up as WYGC's patient.

(p) WYGC initially allowed anti-treatment with anti-psychotics to wear off. Mihaylo got a job as a maid, and impressed her new case manager with having found multiple potential employers on her own initiative – most of his clients on orders for treatment are incapable of any type of employment.

(q) Mihaylo's first prescription from WYGC was for the SSRI drug Lexapro, which is marketed as an anti-depressant. It caused rapid heartbeat, which motivated Mihaylo to take her last full benzodiazepine pill (she had previously been nibbling on them as-needed). Knochel observed Mihaylo's anxiety spiral out of control.

(r) Because WYGC does not give benzodiazepines to outpatients, Mihaylo returned to Phoenix to seek more of these drugs. She did 'okay' until her new phone was stolen from her. This 'stress' contributed to Mihaylo relapsing on street drugs, which caused her to become psychotic.

(s)  Mihaylo was arrested on 5-25-2016 by the Prescott Police. She came out of her psychotic state at the Yavapai County Jail, without the assistance of an anti-psychotic prescription.

(t) Mihaylo did not do well at the first drug rehab facility, due to the "inescapable stress" of a bad treatment program. After a week Knochel determined that Mihaylo was not eating appropriately, but the rehab facility didn't care.

(u) On about 6-14-2016, West Yavapai Guidance Clinic resumed treating Mihaylo with harmful "anti-psychotic" medications.

(v) Mihaylo's outpatient treatment program is causing her to "become more dangerous" and "suffer more serious physical harm or serious illness or further deterioration.", in spite of the requirements of A.R.S. § 36-540 (C)(1)(d).

(w) Important medical information is missing from Mihaylo's mental health medical record.

(x) Actual text of A.R.S. § 36-546 and § 36-546 (A) were quoted on pg. 16.

(y) Court's attention drawn to A.R.S. § 36-540 "Court Options", which directs "The court shall consider all available and appropriate alternatives for the treatment and care of the patient. The court shall order the least restrictive treatment alternative available."

**(b) Second Petition**

(1) **Date you filed:** 08-23-2016

(2) **Name of court:** Yavapai County Superior Court

(3) **Nature of the proceeding:** habeas corpus

(4) **Docket or case number:** P 1300 CV 201600447

(5) **Result:** "Dismissed without prejudice", justified with an incorrect quotation of A.R.S. § 36-546, "Judicial Review". (EXHIBIT 3)

(6) **Date of result:** 09-01-2016

(7) **Grounds raised:**

(a) Referenced previous petition

(b) Mihaylo requested Judicial Review for herself on 7-01-2016. Before she could speak to her attorney, she was re-injected with Abilify, which neutered her willingness to demand effective treatment.

(c) This injection was contrary to A.R.S. § 36-539, which stipulates that the "patient shall not … suffer the effects of drugs, medication or other treatment as to be hampered in preparing for or participating in the hearing.

(d) Knochel again quotes the actual wording of A.R.S. § 36-546, and points out that the habeas corpus petition is NOT to "request the patient's release", but to determine the legality of the Mihaylo's forced treatments.

(e) Definition of "mental disorder" distinguishes from conditions caused by drug & alcohol abuse. All treatment providers knew Mihaylo had psychosis-provoking substances in her system, but used anti-psychotics on her anyways, even though these drugs are known to cause long-term harm.

(f) "Emotional stress" is the main causative factor in Mihaylo's condition.

(g) Mihaylo's alleged 'mental condition' was probably originally worsened (established) with the injection of Depo-Provera when she was about 19 y.o. This warnings for this defective drug lists 'cortisol deficiency' as a possibility.

(h) Mihaylo's September/October 2015 psychiatric evaluations gave variants of "substance abuse disorder", but no treatment provider has yet treated Mihaylo for this diagnosis.

(i) Knochel again points out the ambiguity in the definition of "persistent or acute disability".

(j) Mihaylo was much more functional before treatment with anti-psychotics than after.

(k) Anti-psychotics cause severe damage to the brain and other nerve tissue. This damage is NOT permanent, as Mihaylo's experience from April 2016 to June 2016 demonstrates.

(l) It is common-knowledge among medical professionals that stimulants and alcohol withdrawal cause psychosis. Sobriety is treatment enough for psychosis caused by these substances.

(m)       ... "inescapable stress" of forced treatment...

(n) ... etc, etc.

**(c) Third Petition**

(1) **Date you filed:** 11-23-2016

(2) **Name of court:** Yavapai County Superior Court

(3) **Nature of the proceeding:** habeas corpus

(4) **Docket or case number:** P 1300 CV 201600447

(5) **Result:** "Dismissed without prejudice", justified with an incorrect quotation of A.R.S. § 36-546, "Judicial Review". (EXHIBIT 4)

(6) **Date of result:** 12-7-2016

(7) **Grounds raised:**

(a) incorporated grounds raised in 8-23-2016 petition

(b) noted Knochel's first habeas corpus petition filed on Mihaylo's behalf was granted by the Maricopa County Superior Court, as case# PB 2015-003427 [EXHIBIT 1].

(c) Chronicles the deterioration of Mihaylo's mental status...

(d) Knochel himself complied with this judge's previous order of dismissal by delivering a "request in writing" fully compliant with A.R.S. § 36-546(A)(1) to WYGC on 9-22-2016. A second copy was mailed; a copy of this and the certified mail/return receipt was provided as Exhibit 3. This "request for release" did not result in Knochel providing testimony under oath, which necessitated this (11-23-2016) habeas corpus filing.

(e) In October 2016 Knochel found videos from August 2015 that prove Mihaylo was fine before she was taken to the first hospital in September 2015.

(f) In November 2016, Knochel met Mihaylo's co-worker from the job she briefly worked at in April 2016. This co-worker remembered Mihaylo as "Smart. Quiet, and smart", and remembered that the manager "really liked [Mihaylo]". Mihaylo's employer & coworkers did not realize that Mihaylo was subjected to an order for court-ordered treatment and was not on any medications in April 2016.

(g) Mihaylo lost this job because she couldn't handle "stress" and resumed drinking. Knochel brought this to WYGC's attention, but they refused to provide treatment for this cause of Mihaylo's condition.

(h) Evidentiary hearing requested to show the videos.

(i) Exhibit 4 contained a list of medical records that prove the Mihaylo's alleged "mental disorder" is actually caused by alcohol, forced prescription drugs and other substances, and which prove she was fundamentally misdiagnosed.

(j) Knochel's opinion on the actual status of "present medical knowledge", and how Mihaylo's treatment is not at all compliant with this requirement.

(k) Quotations of statutes that were not complied with.

(l) Affidavit of James Knochel (starting on pg 23).

(1) **Did you appeal the action taken on your petition, application or motion to the:**

|  | Arizona Court of Appeals | Arizona Supreme Court |
|---|---|---|
| (1) First petition | NO | NO |
| (2) Second petition | NO | NO |
| (3) Third petition | YES | YES |

The Arizona Court of Appeals dismissed for "lack of jurisdiction" (EXHIBIT 5), but did not comment on the incorrect statute quotation used by the superior court, did not explain how Knochel (who is NOT an attorney) is supposed to do non-habeas-corpus filings in court, and did not notice the certified mail receipt (their footnote #3). The most relevant errors in this memorandum decision were brought to the supreme court's attention in a petition for review, but the four Arizona Supreme Court justices denied this petition (EXHIBIT 6).

12. For this petition, *state every ground on which you claim that you are being held in violation of the constitution, laws, or treaties of the United States*. Attach

additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

<u>COMMENT: Variations of these grounds were presented in Knochel's pro-se next-friend petitions to the Yavapai Superior Court, in his appeal to the Arizona Court of Appeals, and in an 'updated' petition for writ of habeas corpus filed with the Arizona Supreme Court. No court has considered these grounds and supporting facts on their merits.</u>

**Ground #1:** Mihaylo and Knochel have been denied procedural due process.

**Supporting facts:**

- Knochel thrice petitioned, on Mihaylo's behalf and request, the Yavapai Superior Court for a writ of habeas corpus. These three petitions were dismissed "without prejudice" with identical orders that selectively misquoted A.R.S. 36-546. The dismissals essentially say that time-honored principles of administering habeas corpus petitions are not available to persons whose liberties are restrained by orders for court-ordered treatment.

- The Court of Appeals, Division 1 panel that considered Knochel's appeal of the 3rd dismissal did not comment on the superior court's re-wording of the statutes, even though this was one of the core points presented by Knochel in his briefs.

- The Yavapai Superior Court, Arizona Court of Appeals Division 1, and Arizona Supreme Court have failed to provide "Some Kind of Hearing" to consider four

videos of Knochel & Mihaylo frying donuts. These are from two weeks before her first hospitalization. We have been denied "the opportunity to be heard."

- The state courts' protecting of the state's county governments and treatment providers (who have consistently demonstrated incompetence) is not a 'neutral-decision maker'. The superior court judge cc'd WYGC a copy of the orders of dismissal as a "courtesy" - perhaps the judge was letting the treatment provider know that their patient was trying to escape.

- The two *petitions for court-ordered evaluation*, filed ex-parte against Mihaylo in 2015, denied her an opportunity to directly address the misunderstandings that were presented in these petitions as evidence that she needed to be forcibly evaluated.

- Mihaylo is the victim of human trafficking: habeas corpus relief was granted in a hearing of the Maricopa County Superior Court on 09-22-2015 (Case # PB2015-003427, [Exhibit 1]), and the hospital was ordered to release Mihaylo from their unlawful custody. Mihaylo was then illegally transferred from Hospital #1 to an independent evaluation center, then to Maricopa County's behavioral health center. No one has been prosecuted for these crimes.


**GROUND #2:** Arizona's laws pertaining to court-ordered evaluation and treatment are 'void for vagueness'. The definitions of potentially vague terms are inadequate, or not defined at all. Other vagueness in the statutes are used by treatment providers to violate Mihaylo's rights.

**SUPPORTING FACTS:**

- The "Quality of treatment" statute - A.R.S. § 36-511 - requires that Mihaylo receive "adequate medical treatment" that respects "present medical knowledge". Neither of these terms are defined in A.R.S. § 36-501 "Definitions". Who gets to define "present medical knowledge"? When is the amount of treatment received "adequate", and when does it become 'too much'? Mihaylo is receiving 'too much' anti-psychotics, yet no one can question the psychiatrists' treatment plan. In recent years even conventional psychiatrists have come to appreciate that less treatment is more effective than over-treatment.

- Canadian medical researcher Hans Selye originated the terms 'biological stress' and 'stressor' into medical terminology. His 1976 book 'The Stress of Life' says that 'biological stress' is at the root of both drug abuse and psychosis. Reducing biological and emotional stress is the most important consideration for improving Mihaylo's mental health, but this term is NOT defined or even used in A.R.S. Title 36.

  Mihaylo's forced treatments have served as effective amplifiers of the biological and emotional stress she experiences.

- "Mental disorder" is defined as being distinguished from "(a) Conditions that are primarily those of drug abuse, alcoholism or intellectual disability, unless, in addition to one or more of these conditions, the person has a mental disorder." The circular definition of this term has enabled the violation of Mihaylo's rights. This definition also does not acknowledge that prescription

drugs are one of many causes of mental disorders.

Mihaylo's psychotic presentation to Banner Thunderbird Hospital (September 2015) was entirely the result of "alcoholism" (alcohol withdrawal), but rights violations have allowed the various treatment providers to use their medications to prevent Mihaylo from fully recovering from that episode. Knochel speculates these treatment providers believe that Mihaylo's substance use is caused by her alleged "mental disorder": they have entirely reversed 'cause' and 'effect', with devastating consequences for Mihaylo.

- Mihaylo was found to have a "Persistent or acute disability" on 11-20-2015. This ambiguous term is defined in A.R.S. §36-501 as:

  > 32. "Persistent or acute disability" means a severe mental disorder that meets all the following criteria:
  >
  > (a) If not treated has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality.
  >
  > (b) Substantially impairs the person's capacity to make an informed decision regarding treatment, and this impairment causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to that person.

  Re: "If not treated [...]": The only medical 'treatment' Mihaylo actually requires for her alleged 'mental disorder' is sobriety and help with tapering off psychiatric drugs.

The affidavits filed against Mihaylo by evaluating psychiatrists in September 2015 opined her as "persistently disabled" — even though this is NOT the term defined in A.R.S. §36-501 – because she'd previously been subjected to orders for court-ordered treatment. The state's mental health system had no contact with her from 2011 to 09/2015 – these psychiatrists probably assumed that Mihaylo had been psychotic for the full multi-year period.

In one of these September 2015 affidavits, the psychiatrist quoted Mihaylo as saying "I know I can't trust you guys and your meds." This strongly indicates that Mihaylo was making an "informed decision regarding treatment", based on her prior experience with forced anti-psychotics and her success at tapering herself off these defective drugs in 2011. These psychiatrists are themselves incapable of understanding the disadvantages for their patients of the treatments they advocate.

A non-vague definition of this term would separate the definition into 'persistent disability', 'acute disability', and add 'substance-related disability'. If the court had found Mihaylo to have been 'acutely psychotic' due to alcohol withdrawal and 'acutely disabled' due to inappropriate medical treatments, the types of treatments permissible would be quite different than for a patient who is thought to be 'persistently disabled' due to a head injury or genetic mutation (for example).

To respect Mihaylo's rights, the State of Arizona MUST give reason why her disability is anything other than 'Acute'. Treatment providers violate Mihaylo's rights because they assume she is 'persistently disabled' and has no capacity to recover from her "impair[ed] judgment, reason, behavior or capacity to

recognize reality" without palliative 'anti-psychotic' medications.

- Mihaylo's "mental disorder" was upgraded in October 2016 to her having a "Grave disability". This was presumably done so that the treatment provider could force her to reside at Viewpoint Dual Recovery for the entire year.

  > 15. "Grave disability" means a condition evidenced by behavior in which a person, as a result of a mental disorder, is likely to come to serious physical harm or serious illness because the person is unable to provide for the person's own basic physical needs.

  Fact: Mihaylo was perfectly capable of "providing for her own basic physical needs" before she was hospitalized in September 2015.

- Neither finding of 'disability' — 'persistent or acute' and 'grave' — is concerned about the underlying causes of Mihaylo's condition. Neither finding helps treatment providers respect Mihaylo's right to not have her condition worsened by inappropriate and harmful treatments.

- A.R.S. § 36-540 "Court options" provides that "B. The court shall consider all available and appropriate alternatives for the treatment and care of the patient.  The court shall order the least restrictive treatment alternative available." There is no guidance to help the court put restrictions on what treatment providers can do to their patients. No treatment option than forced medication with tranquilizers has been considered or used as a part of Mihaylo's treatment program.

**Ground #3:** Mihaylo is being denied her substantive due process rights: right to court-ordered treatment that is in compliance with the requirements of the law, right to have the causes of her condition considered by the courts, right to refuse harmful medical treatment, denial of 'persuit of happiness', denial of property without due process of law, etc.

**Supporting facts:**

- Mihaylo's court-ordered mental health treatment is in nearly-complete non-compliance with the requirements of A.R.S. Title 36, Chapter 5. The reference to habeas corpus (A.R.S. § 36-546) is the only safeguard, but this is meaningless if the judges that review a habeas corpus petition decide it too inconvenient to tell the mental health industry that they can't actually do whatever they want to their patients.

  The Arizona Court of Appeals has frequently commented, "Because involuntary treatment strongly implicates a patient's liberty interests, 'statutory requirements must be strictly construed and followed.'"

- Mihaylo's alleged mental disorder is caused at every episode by routine medical practices and worsened by deprivation of liberty. These causes of her condition have never been considered by any court. Her predicament is equivalent to one who is 'entrapped' by law enforcement tricksters.

  Mihaylo's fundamental problem is 'biological stress' and 'emotional stress' related to the circumstances of her childhood. These stresses were amplified with the injection of depo-provera (a prescription endocrine disruptor used as birth control) by her doctor at age 20. Knochel believes Provera made Mihaylo

suicidal. She had her first "psychotic break" following the third injection of this prescription drug. Cortisol deficiency is a known side-effect of Depo Provera. Cortisol deficiency has been associated with psychosis since the 1950's (rediscovered in 2016).

Most 'mental health' problems are now known to be caused by (or associated with) metabolic problems. Mihaylo's previous tendency to self-medicate with various substances (alcohol, etc) can be entirely explained by a treatable metabolic problem, caused by stress and adverse reactions to various medical treatments, not some mysterious "mental disorder" of unknown causation.

A year and a half after the order for treatment was issued, WYGC figured out that Mihaylo would benefit from Methyl-Folate (Vitamin B-9) supplementation, and added this vitamin to Mihaylo's regimen. This vitamin plays important roles in the metabolism, and partially addresses one of the causes of Mihaylo's condition.

- The standard medical model utilized by psychiatry treats mental health problems as 'imbalances of brain chemicals'. This model is simplistic and wrong. Mihaylo is being forced to take palliative drugs that are now known to worsen patients' conditions. Mental health treatment providers have standardized on harmful treatments because they are not familiar with the actual findings of physiology, or aware that much better treatment options now exist. Mihaylo has repeatedly demonstrated that her forced treatments actually cause her alleged "mental disorder" and amplify the physiological imbalances that underlie her tendency to self-medicate.

- There are no FDA-approved or theoretical reasons to support the use of Mihaylo's current psychiatric medications to help with substance abuse problems. There is ample evidence and demonstrations that the various medications that have been forced on Mihaylo actually compel her to relapse on street drugs.

  There are FDA-approved and theoretical treatments to help patients with alcohol and substance abuse problems, but these are NOT a part of Mihaylo's court-ordered treatment program.

- Respondent Amy Fackrell is deliberately harming Mihaylo and denying her "pursuit of happiness" by denying Mihaylo contact with Knochel without an appropriate justification. Fackrell's treatment program for Mihaylo is entirely counter-productive because Knochel's influence provided Mihaylo with motivation to stop self-medicating her depression in August 2015. Fackrell thinks that Mihaylo doesn't need a 'compelling future', and is thereby increasing the emotional stress that is at the root of Mihaylo's condition. Respondent John C. Morris' probation officer goes along with whatever contact restrictions for Mihaylo that Fackrell's employees deem appropriate.

  Mihaylo told Knochel in April 2015 of having 'lost her future' when she was about 16 years old. Knochel thought that was significant, and inquired as to what that meant: the circumstances had to do with her being punished for seeking relief with a substance that is now FDA-approved as a breakthrough therapy for PTSD. In summer 2017 Knochel realized he & Mihaylo could have a compelling future, and informed Mihaylo of this, but Respondent Fackrell has since conspired with WYGC to convince Mihaylo to set low expectations

for herself. Mihaylo is especially vulnerable to Fackrell's brainwashing due to WYGC's forced injections of Abilify.

- Mihaylo's order for treatment & probation are being used to 'brainwash' her into thinking that she's benefiting from her treatment.

    "**Stockholm syndrome** is a condition that causes hostages to develop a psychological alliance with their captors *as a survival strategy during captivity*." (wikipedia)

    "**Learned helplessness** is behavior typical of a human or an animal and occurs where the subject endures repeatedly painful or otherwise aversive stimuli which it is unable to escape or avoid. After such experience, the organism often fails to learn or accept "escape" or "avoidance" in new situations where such behavior would likely be effective. In other words, the organism learned that it is helpless in situations where there is a presence of aversive stimuli, has accepted that it has lost control, and thus gives up trying." (wikipedia)

    Whatever benefit Mihaylo is currently experiencing is due to sobriety and better nutrition, NOT her forced treatment.

- Mihaylo is being denied of life without due process: patients maintained on psychiatric drugs die about 25 years sooner than non-psychiatric patients. Many psychiatric patients experience heart failures in their 30's and 40's. This consequence of the psychiatric medications forced on Mihaylo has never been considered by any court.

- A mental health system that respects people's rights might safeguard people

while they recover from their episode, instead of forcibly 'stabilizing' them with harmful prescriptions.

- Strict Liability vs. Mens rea: Mihaylo is also being deprived of liberty for a victimless crime that only happened because her rights were violated. The criminal justice system is 'punishing' Mihaylo for the incompetence of the mental health industry.

- Substantive due process protects the rights of "discrete and insular minorities". Mihaylo is an insular minority because she was born premature and was adopted, and experienced childhood stress due to the circumstances of her birth. Mihaylo's status as an insular minority also protects her from being imprisoned for regulatory offenses.

- Drug addiction is now increasingly being seen as a public health problem, rather than a 'moral failure'. Prosecuting depressed/anxious/lonely people (such as Mihaylo) for regulatory offenses related to self-medicating with substances provided by organized crime does nothing to deter these mentally-disturbed individuals from their self-harmful behavior. Punishing mental health patients for not harming anyone exponentially increases the stress they experience, and greatly worsens their mental condition.

- There is no "legitimate government purpose" in using a court order to make Mihaylo profitable to the mental health industry. The government's legitimate purpose should be in forcing the mental health industry to adopt more effective practices, even if they are less profitable to the treatment providers.

- Mihaylo is being denied property without due process of law: Mihaylo is

obligated to spend $10,000/month to stay at Respondent Fackrell's Viewpoint Dual Recovery residential treatment facility. This is the result of a decision of WYGC and Yavapai Adult Probation. This cost is a significant burden on her parents, who are paying this 'ransom' because it would be much more harmful for Mihaylo to be sent to prison. The financial burden of this decision has not been taken into consideration by any court.

**Ground #4:** Culpability requires that a person act purposely, knowingly, recklessly, and/or negligently, and have no excuse or justification for their actions. Mihaylo's being subjected to an order for court-ordered treatment is a specific defense against prosecution for a strict-liability offense. Culpability must have been demonstrated to justify criminally prosecuting Mihaylo for not hurting anyone.

**Supporting facts:**

Drug charges against persons who are declared "seriously mentally ill" (SMI) by the State of Arizona are handled in the state's mental health courts. Knochel personally witnessed Mihaylo declining to be labeled SMI, several months before her arrest, as she knows she is fine when not forced to take psychosis-provoking drugs.

Mihaylo's most recent drug prosecution, referenced in this petition, seems to have been handled in a regular court, following standard operating procedures of the Yavapai County Attorney and Yavapai County Superior court. The facts in the other grounds presented in this petition are also in support of Ground #4.

"it is but just that the public be required to care for the prisoner, who cannot by

reason of the deprivation of his liberty, care for himself."

Strict-liability crimes are meant to deter harmful behavior. The State of Arizona has taken ownership of Mihaylo's health decisions. They used this power to force Mihaylo to take prescription drugs that cause physical agony and put her in situations that cause extreme emotional distress. Heroin is just as much an emotional painkiller as a physical painkiller - "a hug in a needle" (Gabor Maté, M.D., *In The Realm of Hungry Ghosts*). Because the State of Arizona exponentially worsened Mihaylo's condition, she cannot be prosecuted for not taking better care of herself.

The massive body count from overdoses with opiates and other drugs in recent decades is evidence of the futility of treating drug addiction (and its associated supply chain) with the criminal justice system. But politicians are gullible, Arizona's judges are vulnerable to retention elections, and voters are easily tricked.


**Ground #5 –** Arizona's treatment and punishment programs for Mihaylo inflicts "cruel and unusual punishment". Mihaylo's bail was also excessive.

**Supporting facts:**

- Mihaylo was arrested for possession of heroin & drug paraphernalia. There was no victim, but her bail was set to $5000. Arizona has eliminated bail for many misdemeanors, but apparently considers sick people ("drug addicts") to be much more dangerous than misdemeanor-fighters and misdemeanor-thieves.

- The Yavapai County Jail has replaced in-person visitation with video visitation.

This is an inadequate substitute for in-person visits, even when the visitors are separated by glass. Jails are turning their internet video visitation programs into revenue streams. Loneliness was an aggravating factor in Mihaylo's addictions, and the denial of in-person visitation during Mihaylo's multi-week warehousing in the Yavapai County Jail amplified the stress of that situation.

- The State had many opportunities to help Mihaylo with her substance abuse problem before her arrest. They have only forced her to take harmful prescription drugs that cause physical pain and make her more likely to self-medicate with alcohol and other drugs obtained from the street pharmacy.

- The most important treatment for substance abuse problems is to help the addict "feel safe". Mihaylo briefly felt safe around Knochel (August-September 2015; March-May 2016); her experiences in the mental health, criminal justice and drug rehab industries have been entirely counter-productive towards this critical aspect of her recovery.

- Mihaylo has had at least three stays at two facilities owned by "Universal Health Services" ("UHS"). This chain of psychiatric hospitals frequently hospitalizes patients for much longer than is necessary. Mihaylo was greatly harmed by the 60+ days she spent at these facilities.

- The benzodiazepine class of prescription drugs are known to amplify the effects of opiates. Further, 'benzos' only help with anxiety for about a month, before they amplify the patient's anxiety. A UHS facility, Valley Hospital [a treatment provider before WYGC], knew that Mihaylo was recovering from opiate addiction, but forced her to become addicted to a benzodiazepine

prescription and provided a prescription for her outpatient use. After the helpful effects of the benzos wore off, Mihaylo ordered heroin from her 'street pharmacist' to help her get through "Benzodiazepine Withdrawal Syndrome" (ICD-10 Diagnosis F13.3). Knochel attributes Mihaylo's subsequent overdose and revival by the Phoenix Fire Department to this prescription.

- Mihaylo is currently being forced to take Abilify, a prescription which is known to make people more compulsive and to amplify their cocaine intake.

- Mihaylo reported to Knochel that she had relapsed on cocaine in Summer-2014 due to severe/suicidal depression. Biochemist Ray Peat has compared the endogenous hormone Estrogen (and the pharmaceutical analogues) to cocaine, amphetamines, and the Mono-Amine Oxidase Inhibitors (MAOIs, used as first-generation anti-depressants). In this view of biology, prescription estrogen, cocaine and the amphetamines are destructive anti-depressants. Dr. Peat further says that the MAOI anti-depressants were reasonably effective, and safer than estrogen, cocaine and amphetamines, but fell out of favor as their patents expired. Dr. Peat also says that each generation of anti-depressants is less effective than the generation that preceded it. There is solid scientific evidence that SSRI drugs, such as Mihaylo is currently prescribed, are most useful for inducing 'learned helplessness', making people suicidal, and contribute to progressive deterioration and increased self-medicating with street drugs that work on the dopamine system.

- Anti-psychotics are known to cause involuntary, repetitive body movements known as tardive dyskinesia. Mihaylo demonstrates tongue darting while being harmed with these drugs, and likely has experienced anti-psychotic-

induced akathisia ("restlessness"). Knochel remembers that Mihaylo's tongue-darting ceased when she escaped from the harmful prescriptions for a few weeks. Patients sometimes deal with these prescription-induced conditions by committing suicide, and/or increasing their use of stimulant street drugs. Forcing Mihaylo to take prescriptions that makes her suicidal is cruel. Forcing a recovering cocaine user to take prescription drugs that make them want to use more cocaine is also cruel, especially when it is also known how to eliminate cocaine cravings.

Deliberate indifference to the terrible side effects of commonly-used psychiatric drugs "constitutes 'the unnecessary and wanton infliction of pain'".

- The prescriptions marketed as 'anti-psychotics' are now known to cause the condition they supposedly treat. Patients do best when they are taken off these drugs as soon as possible. Knochel's videos from August 2015 irrefutably prove that Mihaylo does NOT require maintenance doses of 'anti-psychotics'.

- A common result of conventional treatments endured by patients such as Mihaylo is that they further deteriorate and end up in prison.

**Ground #6 – Mihaylo has received ineffective assistance of counsel.**

**Supporting facts:**

- Mihaylo's 1st (2015) public defender didn't know 'methadone-induced alcoholism' was an entirely-reasonable defense against the charge of having a 'persistent disability'. This defender should have also immediately attacked the ex-parte court-ordered evaluation petition, on account of Mihaylo's illegal

transfer and defective chain-of-custody considerations.

- Mihaylo's 2nd (2015) public defender should have demanded Knochel's testimony at the hearing which resulted in the issuance of an order for court-ordered treatment. Knochel's summons was never sent because they did not have his address. The second public defender also should have called expert witnesses to refute the state's advocation that maintenance with palliative drugs was the only effective treatment option for Mihaylo's substance-induced condition.

- Mihaylo's current public defender is actively refusing to provide services, and has allowed Mihaylo's order for treatment to be renewed twice. "Arizona Rules of Prof.Conduct, ER 1.14 Client with Diminished Capacity" allows attorneys to "take protective measures" to help a client who is at risk. This includes speaking to people who are familiar with the client's actual situation.

**Please answer these additional questions about this petition:**

**13. Have you previously filed any type of petition, application or motion in a federal court regarding the convictions that you challenge in this petition?** <u>NO</u>

**14. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, as to the judgment you are challenging?** <u>NO</u>

**15. Do you have any future sentence to serve after you complete the sentence imposed by the judgment you are challenging?** <u>Mental health & criminal sentences are running concurrently.</u>

16. **TIMELINESS OF PETITION: If your judgment of conviction became final more than one year ago, you must explain why the one-year statute of limitations in 28 U.S.C. § 2244(d) does not bar your petition.**

Arizona Supreme Court issued denial of petition for review on October 2, 2017. Mihaylo's order for treatment was renewed in October 2017.

17. **Petitioner asks that the Court grant the following relief:** Find that Mihaylo was originally only temporarily psychotic due to 'circumstances', that new evidence indicates "beyond a reasonable doubt" that the Arizona state courts' findings that she has a "persistent or acute disability" and "grave disability" were erroneous, that Arizona's statutes pertaining to court-ordered treatment are 'void for vagueness', that Mihaylo's mental condition is actually caused by 14+ years of various harmful medical treatments she voluntarily sought or were forced upon her via orders for court-ordered treatment, that she be released from her illegal order for treatment, that her plea of 'guilty' for possession of drug paraphernalia be stricken because this strict-liability offense happened at a time that her rights were being violated under the color of law, and all other appropriate relief.

Exhibit 1: granted petition for writ of habeas corpus (09-22-2015)
Exhibit 2: Yavapai Superior Court – petition dismissal (06-28-2016)
Exhibit 3: Yavapai Superior Court – petition dismissal (09-01-2016)
Exhibit 4: Yavapai Superior Court – petition dismissal (12-7-2016)
Exhibit 5: AZCOA-1 Ruling
Exhibit 6: ASC Ruling

Date: _____

(inaccessible)

_____
Signature of Pro Se Plaintiff
Emily Noelle Mihaylo
c/o Viewpoint Dual Recovery
702 W. Hillside Ave.
Prescott, AZ 86301

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct:

Date: __1 - 11 - 2018__

_____
Signature of Pro Se Plaintiff

James Joseph Knochel
1100 W Valley View Rd
Prescott, AZ 86303
(928) 925-0279

# Exhibit 1

Michael K. Jeanes, Clerk of Court
*** Filed ***
9/23/2015  8:00 am

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

PB 2015-003427                                            09/22/2015


                                                    CLERK OF THE COURT
COMMISSIONER KERSTIN LEMAIRE                              P. Valenzuela
                                                          Deputy


IN THE MATTER OF

EMILY NOELLE MIHAYLO


AN ADULT.                                    JAMES KNOCHEL
                                             2041 W BETHANY HOME RD
                                             PHOENIX AZ 85015
                                             BANNER THUNDERBIRD MEDICAL
                                             CENTER
                                             PURPLE ZONE
                                             5555 W THUNDERBIRD ROAD
                                             GLENDALE AZ 85306

                                             COLLECTIONS - COC



                            HEARING


    Courtroom OCH 209

    3:54 p.m. This is the time set for hearing re: Writ of Habeas Corpus.  Petitioner, James Knochel, boyfriend, is present on his own behalf.

    A record of the proceedings is made by audio and/or videotape in lieu of a court reporter.

    On this date, this division received a phone call from Banner Thunderbird Medical Center stating that Emily Mihaylo was not going to be delivered to this hearing as a Petition for Court Ordered Evaluation has been filed.


Docket Code 005                     Form P000                          Page 1

**SUPERIOR COURT OF ARIZONA**
**MARICOPA COUNTY**

PB 2015-003427                                                    09/22/2015

The court, having received the documents e-mailed by Banner Thunderbird Medical Center, finds that Banner Thunderbird Medical Center filed an Application for Involuntary Evaluation and not a Petition for Court Ordered Evaluation.

Mr. Knochel provides the court an affidavit reflecting that John Cox, a private process server, attempted to serve Banner Thunderbird Medical Center on September 22, 2015, but the security supervisor refused to allow anyone to accept service.

The court finds that Banner Thunderbird Medical Center was aware of this hearing as Banner Thunderbird Medical Center phoned this division earlier to notify the court that Ms. Mihaylo was not going to be delivered to court.

IT IS ORDERED granting the Writ of Habeas Corpus.

IT IS FURTHER ORDERED that Banner Thunderbird Medical Center shall release Emily Noelle Mihaylo unless a properly filed Petition for Court Ordered Evaluation is filed.

4:02 p.m. Hearing concludes.

LATER:

IT IS ORDERED waiving all fees and costs relating to this Writ of Habeas Corpus.

The court signs this minute entry as an enforceable Order.


JUDICIAL OFFICER OF THE SUPERIOR COURT

All parties representing themselves must keep the court updated with address changes. A form may be downloaded at: http://www.superiorcourt.maricopa.gov/SuperiorCourt/Self-ServiceCenter.

The foregoing instrument is a full, true and cor
the original document.

Attest ISEP 2 2 2015

MICHAEL K. JEANES, Clerk of the Superior
State of Arizona, in and for County of Ma

By  P Valenzuela            De

Docket Code 005                    Form P000                    Page 2

# Exhibit 2

## SUPERIOR COURT, STATE OF ARIZONA, IN AND FOR THE COUNTY OF YAVAPAI

| | | |
|---|---|---|
| EMILY NOELLE MIHAYLO<br>JAMES JOSEPH KNOCHEL,<br><br>        Petitioners,<br><br>-vs-<br><br>WEST YAVAPAI GUIDANCE<br>CLINIC,<br><br>        Respondent. | **Case No.**<br>P1300CV201600447<br><br>**ORDER** | **FILED**<br><br>DATE: ___ JUN 28 2016<br>2:15 O'Clock P .M. ✓<br><br>**DONNA MCQUALITY, CLERK**<br><br>BY: __ K MORTENSON<br>       **Deputy** |

| | |
|---|---|
| **HONORABLE CELÉ HANCOCK**<br><br>**DIVISION 5** | **BY:**  Lilly Miller<br>           Judicial Assistant<br>**DATE:** June 28, 2016 |

The Court has received and reviewed Petitioner's *Petition for Writ of Habeas Corpus with Supporting Memorandum of Law* filed on June 20, 2016. A.R.S. §36-546 provides for judicial review of release of the patient. Pursuant to A.R.S. §36-546(A)(1),

"A request in writing must be "presented to *any member of the treatment staff of the agency providing the patient's treatment.* The request may be made on a prescribed form that shall be prepared by *the facility* and made available for use by any person."

A.R.S. §36-546(A)(2) provides that the request must be "signed and dated and *shall* be delivered to the medical director of the agency". *Id.*

The current *Petition for Writ of Habeas Corpus with Supporting Memorandum of Law* does not comply with the dictates of the statute.

**THEREFORE, IT IS ORDERED** the *Petition for Writ of Habeas Corpus with Supporting Memorandum of Law* is **DISMISSED** without prejudice to the proper procedural filings.

DATED: This 28TH day of June, 2016.

                    Hon. CELÉ HANCOCK<br>                    Judge of Superior Court

cc:    James Knochel, Petitioner – 1100 W. Valley View Rd., Prescott, AZ 86303

# Exhibit 3

**SUPERIOR COURT, STATE OF ARIZONA, IN AND FOR THE COUNTY OF YAVAPAI**

| | | |
|---|---|---|
| EMILY NOELLE MIHAYLO<br>JAMES JOSEPH KNOCHEL,<br><br>           Petitioners,<br><br>     -vs-<br><br>WEST YAVAPAI GUIDANCE<br>CLINIC,<br><br>           Respondent. | **Case No.**<br>P1300CV201600447<br><br>**ORDER** | **FILED**<br>DATE: **SEP 1 2016**  ✓<br>11:05 O'Clock __A__ .M.<br><br>**DONNA MCQUALITY, CLERK**<br>BY: **K MORTENSON**<br>Deputy |

| | |
|---|---|
| **HONORABLE CELÉ HANCOCK**<br><br>**DIVISION 5** | **BY:**   Lilly Miller<br>          Judicial Assistant<br>**DATE:** August 31, 2016 |

          The Court has received and reviewed the *Petition for Writ of Habeas Corpus with Supporting Memorandum of Law* filed on August 23, 2016.  A.R.S. §36-546 provides for judicial review of release of the patient.  Pursuant to A.R.S. §36-546(A)(1),

          "A request in writing must be "presented to *any member of the treatment staff of the agency providing the patient's treatment.  The request may be made on a prescribed form that shall be prepared by the facility* and made available for use by any person."

          A.R.S. §36-546(A)(2) provides that the request must be "signed and dated and *shall* be delivered to the medical director of the agency".  *Id.*

          The current *Petition for Writ of Habeas Corpus with Supporting Memorandum of Law* does not comply with the dictates of the statute.

          **THEREFORE, IT IS ORDERED** the *Petition for Writ of Habeas Corpus with Supporting Memorandum of Law* is **DISMISSED** without prejudice to the proper procedural filings.

          DATED:  This 31st day of August, 2016.

                                        _____
                                        Hon. CELÉ HANCOCK
                                        Judge of Superior Court

cc:     James Knochel, Petitioner – 1100 W. Valley View Rd., Prescott, AZ 86303
        West Yavapai Guidance Clinic *(courtesy)*

# Exhibit 4

**SUPERIOR COURT, STATE OF ARIZONA, IN AND FOR THE COUNTY OF YAVAPAI**

| | | |
|---|---|---|
| EMILY NOELLE MIHAYLO JAMES JOSEPH KNOCHEL,<br><br>Petitioners,<br><br>-vs-<br><br>WEST YAVAPAI GUIDANCE CLINIC,<br><br>Respondent. | **Case No.**<br>P1300CV201600447<br><br>**ORDER** | **FILED**<br><br>DATE: DEC. 7 2016<br>4:21 O'Clock   P .M.<br><br>**DONNA MCQUALITY, CLERK**<br>BY: __K MORTENSON__<br>Deputy |

| | |
|---|---|
| **HONORABLE CELÉ HANCOCK**<br><br>**DIVISION 5** | **BY:**  Lilly Miller<br>          Judicial Assistant<br>**DATE:** December 7, 2016 |

The Court has received and reviewed the *Petition for Writ of Habeas Corpus with Supporting Memorandum of Law* filed on November 23, 2016. A.R.S. §36-546 provides for judicial review of release of the patient. Pursuant to A.R.S. §36-546(A)(1),

"A request in writing must be "presented to *any member of the treatment staff of the agency providing the patient's treatment.* The request may be made on a prescribed form that shall be prepared by *the facility* and made available for use by any person."

A.R.S. §36-546(A)(2) provides that the request must be "signed and dated and *shall* be delivered to the medical director of the agency". *Id.*

The current *Petition for Writ of Habeas Corpus with Supporting Memorandum of Law* does not comply with the dictates of the statute.

**THEREFORE, IT IS ORDERED** the *Petition for Writ of Habeas Corpus with Supporting Memorandum of Law* is **DISMISSED** without prejudice to the proper procedural filings.

DATED: This 7th day of December, 2016.

_____
Hon. CELÉ HANCOCK
Judge of Superior Court

cc:    James Knochel, Petitioner – 1100 W. Valley View Rd., Prescott, AZ 86303
       West Yavapai Guidance Clinic *(courtesy)* (e)

Exhibit 5

NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JAMES JOSEPH KNOCHEL, *Appellant,*

*v.*

WEST YAVAPAI GUIDANCE CLINIC, *Appellee.*

No. 1 CA-HC 17-0001
FILED 7-11-2017

---

Appeal from the Superior Court in Yavapai County
No. P1300CV201600447
The Honorable Cele Hancock, Judge

**APPEAL DISMISSED**

---

COUNSEL

James Joseph Knochel, Prescott
*Appellant*

The Ledbetter Law Firm P.L.C., Cottonwood
By James E. Ledbetter, Tosca G. Henry
*Counsel for Appellee*

KNOCHEL v. WYGC
Decision of the Court

---

### MEMORANDUM DECISION

Judge Patricia K. Norris[1] delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

---

**N O R R I S**, Judge:

**¶1**　　　　Appellant, James J. Knochel, appeals from the superior court's order dismissing without prejudice his "Petition for Writ of Habeas Corpus with Supporting Memorandum of Law" ("Petition") on behalf of E.M.[2] because he failed to comply with the procedural requirements of A.R.S. § 36-546(A)(2).[3] For the following reasons, we dismiss this appeal for lack of jurisdiction.

### DISCUSSION

**¶2**　　　　We have an independent duty to determine whether we have jurisdiction over an appeal. *Grand v. Nacchio*, 214 Ariz. 9, 15, ¶ 12, 147 P.3d 763, 769 (App. 2006). Generally, a party may only appeal a final judgement. A.R.S. § 12-2101(A)(1) (2016); *Baker v. Bradley*, 231 Ariz. 475, 479, ¶ 9, 296 P.3d 1011, 1015 (App. 2013) (court of appeals jurisdiction "limited to

---

[1]The Honorable Patricia K. Norris, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]Although labeled a "Petition for Writ of Habeas Corpus," the Petition expressly did not request E.M.'s release from court ordered mental health treatment at the West Yavapai Guidance Clinic ("WYGC"). Instead, the Petition requested the court to "investigate" E.M.'s mental health treatment under Arizona Revised Statutes ("A.R.S.") section 36-546 (2016). Accordingly, as did the superior court, we have treated the Petition as a request for relief under A.R.S. § 36-546.

[3]Section 36-546(A)(2) requires that a request for release "shall be delivered to the medical director of the agency" providing treatment. The record before us contains no evidence that Knochel's request was delivered to the medical director of WYGC—the agency providing treatment. Although the Legislature amended this statute in 2017, after Knochel filed the Petition, the amendments did not change these requirements.

2

KNOCHEL v. WYGC
Decision of the Court

appeals from final judgements which dispose of all claims and parties")
(citations omitted). A final judgment dismissing an action with prejudice is
appealable, but an order dismissing an action without prejudice is not.
*Workman v. Verde Wellness Ctr., Inc.*, 240 Ariz. 597, 600, ¶ 7, 382 P.3d 812, 815
(App. 2016) (order dismissing without prejudice is not a final judgement
under A.R.S. § 12-2101(A)(1) because plaintiff can refile action and has
nothing to appeal) (citation and quotation omitted).

¶3          Here, the superior court's order dismissed the Petition
"without prejudice to the proper procedural filings." Accordingly, we lack
jurisdiction over this appeal.

## CONCLUSION

¶4          For the foregoing reasons, we dismiss Knochel's appeal for
lack of jurisdiction. We deny WYGC's request for an award of attorneys'
fees on appeal because it did not identify a substantive basis for its request
as required by Arizona Rule of Civil Appellate Procedure ("ARCAP")
21(a)(2). Nevertheless, we award WYGC's costs on appeal contingent upon
its compliance with ARCAP 21(b).



AMY M. WOOD • Clerk of the Court
FILED:          JT

3

Exhibit 6

SCOTT BALES
CHIEF JUSTICE

JANET JOHNSON
CLERK OF THE COURT

## Supreme Court

**STATE OF ARIZONA**
ARIZONA STATE COURTS BUILDING
1501 WEST WASHINGTON STREET, SUITE 402
PHOENIX, ARIZONA 85007-3231

TELEPHONE: (602) 452-3396

October 2, 2017

**RE: JAMES KNOCHEL v WEST YAVAPAI GUIDANCE CLINIC**
Arizona Supreme Court No. CV-17-0238-PR
Court of Appeals, Division One No. 1 CA-HC 17-0001
Yavapai County Superior Court No. CV 201600447

GREETINGS:

The following action was taken by the Supreme Court of the State of Arizona on October 2, 2017, in regard to the above-referenced cause:

**ORDERED: Appellant's Motion to Amend Caption = DENIED.**

**FURTHER ORDERED: Petition for Writ of Habeas Corpus (Updated) (Treated as Supplement to Petition for Review) = DENIED.**

**FURTHER ORDERED: Petition for Review = DENIED.**

**A panel composed of Chief Justice Bales, and Vice Chief Justice Pelander, and Justice Brutinel and Justice Timmer participated in the determination of this matter.**

Janet Johnson, Clerk

TO:
James Joseph Knochel
James E Ledbetter
Tosca G Henry
Amy M Wood
bp