FILED ___ LODGED
___ RECEIVED ___ COPY

JAN 1 1 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Emily Noelle Mihaylo
Place of Confinement:

Viewpoint Dual Recovery
702 W. Hillside Ave.
Prescott, AZ 86301

James Joseph Knochel  (co-petitioner)
1100 W Valley View Rd
Prescott, AZ 86303
(928) 925-0279

## IN UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Emily Noelle Mihaylo;

James Joseph Knochel,
                          Plaintiffs,
v.

Shane Russell-Jenkins;

Amy Fackrell;

John C. Morris,
                          Respondents,
                          and
The Attorney General of the State of
Arizona,
                          Additional Respondent.

CASE NUMBER:

CV-18-08004-PCT-DGC-DKD
GMS-JZB
bySQ

**TRIAL BRIEF OF PETITIONERS:**

**Exhaustion of State Remedies**

## Table of Contents

Presentation of the Issue.........................................................................................................2

Regarding: (B)(ii)Circumstances exist that render such process ineffective to protect the rights of the applicant...........................................................................................................................3

Regarding: (A) Exhaustion of remedies in state courts.............................................................5

Regarding: (B)(i) Absence of available State corrective process..............................................10

Conclusion.............................................................................................................................11

Table of Authorities................................................................................................................12

Exhibits..................................................................................................................................12

## Presentation of the Issue

This trial brief, prepared on the advice of the free attorney consulted at the Phoenix US District court, is to demonstrate that the requirements of 28 U.S.C. §2254 (b) have all been satisfied:

> 28 U.S.C. § 2254 – State custody; remedies in Federal courts
>
> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

**Regarding: (B)(ii)Circumstances exist that render such process ineffective to protect the rights of the applicant**

People have rights, unless they have a "mental disorder", then their rights are safe to ignore:

1. The allegations and allegations of fact in Mihaylo and Knochel's Petition indicate systemic problems in Arizona's approach to court-ordered mental health treatment. The system exists to help with "providing needed treatment" (A.R.S. §36-501, Definition #21, "Least restrictive treatment alternative"), but Knochel has observed that Mihaylo and many other patients are harmed by their experience with court-ordered evaluation and treatment.

   These allegations were presented to the Arizona Court of Appeals and Arizona Supreme Court. Perhaps these justices silently deferred judgment to the federal courts, so that victims of involuntary mental health treatment in other states may also benefit from this case.

2. No group of people is more politically-disadvantaged than mentally-troubled people who self-medicate with alcohol and other substances. This group spends a disproportionate amount of time incarcerated, where their conditions always deteriorate.

3. Judicial bias against those labeled as 'mentally ill' seems to be common. It is probably easy for judges to assume that patients will certainly be helped by orders for treatment, or at least not be overtly harmed.

A legal aid attorney told Knochel that judges almost always side with the prosecuting psychiatrist. Knochel has read several decisions by the Arizona Court of Appeals that raised legitimate complaints about the patient's court-ordered evaluations & orders for treatment. These improprieties were glossed over because the lower court's ruling was deemed acceptable. 'Technicalities' seem to be the only way to get the Arizona Court of Appeals to rule in favor of a person appealing their order for treatment.  The source of the errors seems to be that the defenders, judges and psychiatrists are unfamiliar with the actual status of "present medical knowledge" regarding mental health.

No judge wants to be lenient on a future mass-murderer. Most judges do NOT realize that some mass-murderers were certainly created by psychotropic medications (Ref: *Medication Madness: The Role of Psychiatric Drugs in Cases of Violence, Suicide, and Crime*, by Peter Breggin, M.D.).

4. Patients subjected to orders for treatment have very limited possibility of benefiting from requesting the system respect their right to refuse harmful treatment.

The nature of court-ordered mental health treatment is that the only way for most patients to recover their right to participate in their own medical decision-making is to convince their doctors that no matter how terrible the side effects of the medications, they understand that they'll have to take them for the rest of their life.

Mihaylo was previously subjected to orders for court-ordered treatment in 2008 and 2010. Mihaylo currently knows that if she complains about the side

effects of her present medications – perhaps by requesting judicial review – her psychiatrists would take this to indicate that she 'lacks insight' into her condition and is resisting the medications they believe are benefiting her.

WYGC renewed Mihaylo's order for treatment in October 2017, even though Mihaylo had made every effort to take her medications without complaint for the entire period of June 2016 to October 2017, in spite of their terrible effects on her.

Mihaylo knows that she has a history of substance abuse, and really wants to get this under control. She is currently focusing herself entirely on this goal, and is just trying to survive the stress of her situation at the present. Mihaylo is not currently capable of appreciating how bad her mental condition became during the first 15 months of her ordeal (September 2015 to January 2017), nor how vulnerable to relapsing her present medications make her.

**Regarding: (A) Exhaustion of remedies in state courts**

Knochel has thrice petitioned the Yavapai Superior Court, as Mihaylo's "next friend" and by Mihaylo's specific request, for a writ of habeas corpus on the grounds that the requirements in state law for Mihaylo's court-ordered treatment program are not being respected, and that Mihaylo's rights are being violated. These three petitions were dismissed "without prejudice", with 3 identical orders of dismissal (attached to Petition). The dismissals cite Arizona Revised Statutes 36-546(A)(1) and 36-546(A)(2) as:

> "A request in writing **must** be "presented to *any member of the treatment staff of the agency* providing the patient's treatment. The request may be made on a

prescribed form that shall be prepared by *the facility* and made available for use by any person."

A.R.S. §36-546 (A)(2) provides that the request must be "signed and dated and *shall* be delivered to the medical director of the agency". *Id.*

*Italics* and mismatched quotation marks as used in the orders of dismissal, **bold** emphasis added by Knochel. The actual wording of A.R.S. § 36-546 is as follows:

36-546. Judicial review; right to be informed; request; jurisdiction
A. **In addition to the procedure for applying for a writ of habeas corpus**, as provided in title 13, chapter 38, article 26, a patient receiving court-ordered treatment or any person acting on the patient's behalf **may request the patient's release** pursuant to the following:

1. **A request in writing may be presented to any member of the treatment staff** of the agency providing the patient's treatment. The request may be made on a prescribed form that shall be prepared by the facility and made available for use by any person. The completed form shall identify:
    (a) The patient being treated and the agency at which the patient is being treated.
    (b) The person to whom the request for release was made.
    (c) The person making the request for release, indicating whether the person is the patient being treated or someone acting on the person's behalf.
2. The request, when signed and dated by the person making the request for release, **shall be delivered to the medical director of the agency**. Within three days of receipt of the request, **the medical director shall deliver the form**, along with a current psychiatric report of the patient's condition, **to the clerk of the court**. If the person presenting the request refuses to sign the form, the medical director of the agency shall proceed as if the form had been signed and shall note on the form the circumstances as to why the form was not signed.

Emphasis in bold above added by Knochel. Knochel's reading of this section of the Arizona Revised Statutes raises these points:

1. Petitioning for a writ of habeas corpus, using the standard procedures in "title 13, chapter 38, article 26", is the primary method for requesting the courts to review the treatment of persons subjected to an order for court-ordered mental health treatment.

2. A secondary method for "requesting the patient's release" from their order for treatment is provided, presumably so that 'any person' who is not personally capable of filing with the court can also request the court's attention.

3. This "request in writing" is ONLY for requesting the patient's "release from treatment". There is no secondary method for a patient or "any person acting on the patient's behalf" to request the courts order the treatment provider to comply with the requirements of A.R.S. § 36-511, "Quality of treatment", or to draw attention to any other rights violation. This error and ambiguity actively prevented Mihaylo from receiving appropriate services from her public defender (discussed below).

4. When a "request in writing" is "presented to any member of the treatment staff", that employee "shall" deliver same "to the medical director of the agency".

5. The effect of delivering the "request in writing" to the treatment provider is that the patient is put in contact with their public defender. The defender is "to assist in preparation of a petition for the writ of habeas corpus".

6. Mihaylo, whose condition was being actively worsened by the resumption of harmful psychiatric medications, did not desire to be released from treatment in July 2016, as she knows that psychosis-provoking psychiatric drugs need to

be tapered gradually. Mihaylo wanted her treatment provider to address her depression ("individual needs" - A.R.S. § 36-511 (B)(1)), and to recognize that "present medical knowledge" (A.R.S. § 36-511 (B)(4)) holds that anti-psychotics actually cause the condition they supposedly treat.

Knochel filed his first petition for writ of habeas corpus in the Yavapai Superior Court on 6-20-2016. After this was dismissed, Knochel requested the "prescribed form" from West Yavapai Guidance Clinic ("WYGC"), which is to be "made available for use by any person." WYGC contacted their attorney to have said form drafted. The new form was then delivered to Mihaylo, who signed it to request judicial review herself. WYGC delivered a copy of Mihaylo's signed form to Knochel.

Mihaylo rapidly deteriorated due to resumption of inappropriate medications before her defender made contact with her over a week later. Mihaylo later told Knochel that the defender told Mihaylo that she was requesting to be released from treatment, and informed her that she would immediately lose her AHCCCS insurance. Mihaylo then thought it better to try to negotiate herself with her treatment provider for appropriate treatment. Mihaylo was interested in treatment for depression, figured she only had to endure the harmful psychiatric drugs until her order for treatment expired in November 2016, and did not fully appreciate her predicament.

Knochel's second petition for writ of habeas corpus was filed on August 23, 2016. This included a copy of Mihaylo's request for judicial review.

After his second petition was dismissed "without prejudice", with an order identical to that used in the first dismissal, Knochel hand-delivered to WYGC a "request in writing" that Mihaylo be 'released from treatment'. This contained all the

information required in A.R.S. § 36-546 "judicial review". A second copy of this request was mailed on the same day via certified mail with a return receipt postcard.

When this "request in writing" did not result in his providing testimony under oath, Knochel filed a third petition for writ of habeas corpus on November 23, 2016. Page 35 and 36 provided a copy of Knochel's "request in writing" and the certified mail/return receipt. This petition was also dismissed 'without prejudice', with a third identical order of dismissal.

Knochel appealed this third dismissal to the Arizona Court of Appeals. He tried to be charitable, and said that the superior court judge had "misread" the statutes. The Court of Appeals dismissed Knochel's appeal for lack of jurisdiction. The panel's Memorandum Decision did not comment on the difference between the quotations of statute used in the orders of dismissal and the actual wording of the statutes. This decision also did not comment on how the habeas corpus petitions filed by Knochel is any different than a habeas corpus petition filed by a public defender. Footnote #3 uses a second ambiguity of the statute to justify their dismissal:

> 3. Section 36-546(A)(2) requires that a request for release "shall be delivered to the medical director of the agency" providing treatment. The record before us contains no evidence that Knochel's request was delivered to the medical director of WYGC — the agency providing treatment.

This footnote has two errors. The first is that the Section 36-546(A)(1) allows for Knochel to deliver his "request in writing" to "any member of the treatment staff of the agency". The second error is that page 35 and 36 of the third petition contained a copy of Knochel's "request in writing" and a copy of the USPS certified mail and

Return Receipt. This demonstrated that Knochel had done all he could do to comply with the superior court judge's mis-quotation of the statute.

The various issues were presented to the Arizona Supreme Court in a petition for review. Knochel also filed an "updated" petition for writ of habeas corpus under this case. These petitions were denied on 10-02-2017.

The free attorney at the Phoenix US District Court initially encouraged Knochel to put WYGC's Medical Director's name on a new mailed "request for release" return receipt postcard. But the three orders of dismissal clearly indicate that *this* superior court judge will NOT consider any habeas corpus petition filed by "some person" on Mihaylo's behalf. This is a fundamental denial of the time-honored principle of allowing a prisoner's "next friend" to file for habeas corpus on their behalf.

## Regarding: (B)(i) Absence of available State corrective process

Knochel has studied the section of A.R.S. Title 36 pertaining to court-ordered evaluation and treatment. Other than habeas corpus petitions, there is a complete absence corrective process for persons subjected to orders for court-ordered treatment.

The defects in Mihaylo's court-ordered treatment program were brought to the Arizona Attorney General's office. The civil rights department replied to Knochel's correspondence/Petition with a letter stating that they do not have jurisdiction to investigate the complaint (EXHIBIT 1).

Knochel also filed a complaint with the Arizona Department of Health Services. Their reply was that they also lack the ability to do anything about Mihaylo's predicament (EXHIBIT 2).

Knochel found a probate attorney who is familiar with Arizona's court-ordered treatment program, and who could conceivably get the Yavapai Superior Court to do its job in forcing the treatment providers to respect Mihaylo's rights. But Knochel can't afford this attorney's services.

## Conclusion

Knochel has accumulated significant evidence that Mihaylo's treatment by the State of Arizona fundamentally violates Mihaylo's rights. Four petitions for writ of habeas corpus, containing allegations and allegations of facts, were presented to the Arizona courts, but these courts have dismissed these petitions by nullifying the time-honored "next friend" doctrine for filing for habeas corpus relief on behalf of another.

Mihaylo's primary concern is that these petitions jeopardize whatever rapport she has earned with her captors, whose illegal actions render Mihaylo delusional and incapable of acting in her own best interest. Knochel has exhausted his options in state court for seeking judicial consideration that Mihaylo's order for court-ordered treatment has resulted in a fundamental violation of her rights, and asks this federal district court to consider the present petition on its merits.

## Table of Authorities

### Statutes

A.R.S. 36-501, Definitions - #21  "Least restrictive treatment alternative"

A.R.S. §36-501, Definitions - #21, "Least restrictive treatment alternative"

A.R.S. §36-546 "Judicial review; right to be informed; request; jurisdiction"

A.R.S. § 36-511, "Quality of treatment"

## Exhibits

Exhibit 1 – letter from the Arizona Attorney General
Exhibit 2 – letter from Arizona Department of Health Services

RESPECTFULLY SUBMITTED,

Date: _____

(inaccessible)

_____
Signature of Pro Se Plaintiff
Emily Noelle Mihaylo
c/o Viewpoint Dual Recovery
702 W. Hillside Ave.
Prescott, AZ 86301

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true
and correct:

Date: __1-11-2018__

_____
Signature of Pro Se Plaintiff
James Joseph Knochel
1100 W Valley View Rd
Prescott, AZ 86303
(928) 925-0279

Exhibit 1



**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

**MARK BRNOVICH**
**ATTORNEY GENERAL**

**CIVIL LITIGATION DIVISION**
**DIVISION OF CIVIL RIGHTS SECTION**

**THERESA RASSAS**
**REBEKAH BROWDER**
**CHIEF COUNSEL**

August 25, 2017

Mr. James Knochel
1100 W. Valley View Road
Prescott, AZ 86303

Dear Mr. Knochel,

We are in receipt of your correspondence.

The Civil Rights Division of the Arizona Attorney General's office is empowered by the Arizona Civil Rights Act to investigate complaints regarding alleged unlawful discrimination in the areas of employment, housing, public accommodations and voting. In order for the Division to have jurisdiction over a complaint, it must contain an allegation that a person was subjected to discriminatory treatment because of the person's race, color, age, national origin, religion, sex (including pregnancy) or disability. Under the Arizona Fair Housing Act, a person's familial status is also a protected characteristic.

Based on the information that you have provided to the Division, it appears that this agency does not have jurisdiction to investigate your complaint.

Sincerely,

Arizona Civil Rights Division Intake Unit

#6165873

Exhibit 2



**ARIZONA DEPARTMENT OF HEALTH SERVICES**
LICENSING

**Public Health Licensing Services**
**Bureau of Medical Facilities Licensing**

150 North 18th Avenue, Suite 450
Phoenix, Arizona  85007-3242
(602) 364-3030
(602) 792-0466 Fax

DOUGLAS A. DUCEY, GOVERNOR
CARA M. CHRIST, MD, DIRECTOR

June 14, 2017

James Knochel
1100 W Valley View Rd
Prescott, AZ 86303

Re:     Complaint Intake #AZ00141755
West Yavapai Guidance Clinic
625 Hillside Avenue
Prescott, AZ  86301

Dear James Knochel:

The complaint regarding the above referenced facility has been received and reviewed by the Arizona Department of Health Services,  Bureau of Medical Facilities Licensing.

This review process takes place on all complaints received prior to investigation.  During the review process, the complaint is broken down into areas that correspond to the Department's rules and, if applicable, Federal regulations.  At this time, the complaint is also prioritized, based upon the level of health and safety involved.

Based on the results of the review, the above referenced complaint has been handled through the Department's case disposition process.  This complaint does not fall within the Department rules found within A.A.C. Title 9, Chapter 10.  This means the Department does not have rules or regulations regarding the allegations you have submitted or the Department does not license or regulate the facility you have named in your complaint.

If you would like further information regarding this disposition, please call our office at (602) 364-3030 and ask to speak to the surveyor of the day.  The public file for this facility is also available for review at this office.

Sincerely,

Connie Belden

Connie Belden, R.N.
Bureau Chief
Bureau of Medical Facilities Licensing

CB:CLR

*Health and Wellness for all Arizonans*